IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA

SHELBY HILLER AND TY HILLER,
AS THE PERSONAL REPRESENTATIVES OF THE
ESTATE OF JAMES D. HILLER,

    **Plaintiffs,**

v.

NATIONWIDE AGRIBUSINESS INSURANCE - NAIC,

    **Defendant,**

Civil Action No.:   4:24-cv-4089

---

## COMPLAINT AND JURY DEMAND

---

**COME NOW** Plaintiffs Shelby Hiller and Ty Hiller, as the Personal Representatives of the Estate of James D. Hiller (hereinafter "Plaintiffs"), and complain of Defendant Nationwide Agribusiness Insurance – NAIC (hereinafter "Defendant"). In support of the following claims and causes of action, Plaintiffs would respectfully show unto this Honorable Court as follows:

### NATURE OF THE ACTION

1.     Plaintiffs bring this action seeking economic and penalty-based damages arising from Defendant's breach of contract, bad faith conduct, breach of fiduciary duty, and refusal to pay the full amount of covered benefits due and owing under Plaintiffs' first-party insurance contract without reasonable cause.

## PARTIES

2.      Plaintiffs are the Personal Representatives of James D. Hiller, deceased. Plaintiffs were duly appointed as Personal Representatives of the Estate of James D. Hiller in accordance with SDCL § 29A-3-202 and § 29A-3-203.

3.      Upon information and belief, Defendant is a foreign insurance company engaged in the business of adjusting insurance claims in the State of South Dakota. This includes, but is not limited to, Policy Number FPK FMPN 31 0 0265139 (hereinafter the "Policy") and Claim No. 269116-GN (hereinafter the "Claim"), both of which are at issue in the present case.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction and venue is proper pursuant to 28 USC §§ 1332(a) and 1441. There is complete diversity among the parties and the amount in controversy is in excess of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs. The property which is the subject of this action is also located in South Dakota.

## FACTS COMMON TO ALL COUNTS

5.      This matter revolves around a first-party insurance dispute regarding the extent of damages and amount of loss suffered to Plaintiffs' property as a result of a covered loss under an insurance policy.

6.      James D. Hiller is the named insured under the Policy, which provides insurance coverage for the real property located at 23694 470th Ave., Colman, South Dakota 57017 (the "Property").

7.      The Property is a farm comprised of a dwelling, and other structures, including but not limited to, two open faced sheds, a grain bin, two silos, and other personal property.

8.    Prior to the occurrence in question, James D. Hiller purchased the Policy from Defendant to cover the Property at issue for loss due to hail, wind and other covered perils. Mr. Hiller purchased the Policy for purposes of covering economic impact of losses to the Property.

9.    Mr. Hiller made complete and timely insurance payments of all insurance premiums. Moreover, the Policy provided coverage for the Property during the date of loss in question.

10.    On or about May 12, 2022, while the Policy was in effect, the Property sustained significant damage as a result of a covered windstorm in Colman, South Dakota. The storm was a significant event that included strong wind gusts that occurred at and around the Property for an extended period of time.

11.    The winds from the storm caused large amounts of debris and other objects to impact the structures on the Property and otherwise littered the Property, which Plaintiffs kept well-maintained, with debris.

12.    The National Oceanic and Atmospheric Administration confirmed the storm, which swept through Moody County, South Dakota (where the Property is located), included "widespread straight-line winds between 50 and 70 mph … with smaller areas of 80 to 100 mph winds", along with wind gusts between 90 and 107 mph.[1]

---

[1]    *See* https://www.weather.gov/fsd/20220512-wind-mayderecho; *see also* https://moodycountyenterprise.com/stories/derecho-brings-90-mph-winds-and-destruction,12729.

13.     Further, the "[National Centers for Environmental Information] counted the May 12, 2022 derecho as one of 18 separate weather and climate disasters costing as least $1 billion" in damages.[2]

14.     The windstorm caused significant damage to the Property, including but not limited to the roofing systems, siding of the structures, damage due to the structures badly shaking during the storm, damage to the framework of the structures, and damage to personal property.

15.     The Property damage constitutes a covered loss under the Policy.

16.     In fact, that this windstorm occurred and caused significant covered property damage is not in dispute.  Defendant has admitted this fact.

17.     What remains at issue, however, is Defendant's unreasonable refusal to provide coverage for the full scope of damages sustained by the Property as a result of this weather event, and Defendant's improper claims handling.

18.     In this regard, upon becoming aware of the severe damage to the Property, on or about May 16, 2022 Plaintiffs provided prompt notice of the loss to Defendant in accordance with the Policy. Defendant then opened the Claim and assigned an adjuster to adjust the loss.

19.     Despite the fact that the damage constitutes a covered loss, Defendant failed to provide coverage rightfully owed under the Policy and severely underpaid the Claim. Defendant also failed to timely and adequately adjust the loss.

20.     Defendant assigned claims adjuster, Neil Freund, to adjust Plaintiffs' Claim for the direct physical loss and damage resulting from the windstorm referenced herein.

---

[2]     *See* https://www.keloland.com/keloland-com-original/a-billion-dollar-storm-may-12-2022-derecho/#:~:text=That%20storm%20event%20produced%20more,a%20billion%2Ddollar%20disaster%20event.

21.     After performing an on sited inspection of the Property, Defendant acknowledged that a covered loss occurred.

22.     Defendant, however, unreasonably and inexplicably limited coverage to only approximately $193,000.00 for damage to the Property, which is a significant underpayment of the Claim that did not provide the insurance benefits Plaintiffs are rightfully entitled to receive to place the Property in a pre-loss condition.

23.     As a result of Defendant's wrongful conduct, Plaintiffs were forced to retain a licensed public insurance adjuster to assist in the presentation of the Claim. The public adjuster conducted a thorough investigation of the loss concluding the scope of covered damage to the Property was significantly more than acknowledged by Defendant.

24.     Contrary to Defendant's position, Plaintiffs presented Defendant with detailed estimates and explanations establishing the Property suffered substantial covered wind damage of no less than $400,000 as a result of the weather event noted above. More specifically, and without limitation, Plaintiffs' investigation revealed significant covered damage to the roofing systems, siding, structural integrity of the structures, including the garage, and water damage.

25.     Importantly, this damage is consistent with the damage as identified by other independent third parties who have investigated the loss, including contractors and a professional engineer, Engineering & Technical Services, Inc.

26.     In fact, Engineering & Technical Services, Inc. issued a report of findings, which Plaintiffs presented to Defendant, wherein the following conclusions were reached within a reasonable degree of engineering certainty:

     a.   The siding is so severely wind damaged it is likely to allow water penetration and cause deterioration of the wood structural members. Thus, replacement of the siding is necessary.

     b.   The house was badly shaken and requires remedial repairs to return it to useable condition, including strengthening the walls of the garage and framework, and full replacement of the roof system.

27.    In addition to the foregoing, Plaintiffs also presented Defendant with other evidence substantiating the true scope of the loss, including, but which may not be limited to, numerous photographs of the significant damage to the Property.

28.    The substantial damage to the Property presented by Plaintiffs is indicative of severe wind damage and consistent with the covered weather event that occurred on or about May 12, 2022 that impacted the Property.

29.    Despite Plaintiffs' endeavor to provide a comprehensive accounting and valuation of the loss, Defendant advised Plaintiffs it was rejecting its accounting and valuation of the loss.

30.    In doing so, Defendant continued to unreasonably dispute the value and scope of the loss incurred and presented by Plaintiffs.

31.    For example, despite the fact that Plaintiffs presented Defendant with photographs showing the siding to the Property was severely wind damaged, which includes siding that is cracked and broken, in addition to the opinions of a professional engineer that the siding must be replaced, Defendant refuses to acknowledge and pay for that damage based upon nothing more than its own self-serving claimed "disagreement" with the opinions of such professionals.

32.     The same is true for the damages sustained to the garage.  Despite the fact that Plaintiffs presented Defendant with evidence, including numerous photographs and an engineering report, that establish such damages were caused by the subject wind event, Defendant refuses to acknowledge and pay for such damage, which again, is based upon nothing more than Defendant's own self-serving claimed "disagreement" that the damages were caused by the windstorm.

33.     Defendant, who has failed to provide Plaintiffs with the insurance benefits rightfully owed under the Policy in connection with the Claim for almost two years, has also intentionally and wrongfully used the incorrect price list in its estimate of the loss.

34.     As it relates to same, Defendant continues to use the price list from February 2023 despite the fact that such pricing is outdated and not consistent with the costs Plaintiffs will incur today to place the Property in a pre-loss condition, which have increased substantially since February 2023 (a time period of more than 15 months ago).

35.     Additionally, Defendant, in a clear effort to place its own interests above Plaintiffs' interests, has also attempted to use the ITEL software system to estimate damages for the replacement of the roof system (which wrongfully reduced the benefits Plaintiffs are entitled to recover to the obvious benefit of Defendant) when the use of the Xactimate software system, as used by Plaintiffs and their representatives to estimate the loss, is industry standard.

36.     In short, Defendant continues to refuse to provide Plaintiffs with insurance benefits they are entitled to recover.

37.     The clear evidence of Property damage presented by Plaintiffs and their representatives represents the covered damage to the Property and the minimum amount Plaintiffs are owed under the Policy in connection with the Claim.

38.     These damages, in addition to other damages presented by Plaintiffs and their representatives, were clear and easily identifiable but were inexplicably ignored by Defendant.

39.     Defendant did not account for and provide coverage for the damage to the Property caused by the covered weather event and presented by Plaintiffs and their representatives.

40.     Under the Policy, Defendant is obligated to pay for direct physical loss and damage to the insured Property resulting from the windstorm.

41.     Under the Policy, Defendant agreed to adjust all losses with its insured fairly and timely.

42.     Based upon the covered damages identified by Plaintiffs, it is clear Defendant failed to complete a full and fair investigation of the Plaintiffs' losses.

43.     Based upon the covered damages identified by Plaintiffs, it is clear Defendant failed to appropriately instruct its retained adjusters and/or representatives in investigating and adjusting Plaintiffs' loss.

44.     Based upon the covered damages identified by Plaintiffs, it is clear Defendant failed to ensure that all covered damages were provided for timely.

45.     Defendant continues to deny coverage of the Claim intentionally, unreasonably and for reasons that are vexatious and without reasonable cause.

46.     In doing so, Defendant has intentionally and wrongfully delayed and denied the Claim and refused to issue a full and fair payment for the covered loss as rightfully owed under the Policy.

47.     Defendant also failed to provide Plaintiffs with an adequate explanation of the basis for its denial of the Claim and refusal to offer a full and fair settlement in violation of SDCL § 58-33-67. To date, Plaintiffs have not yet received such an explanation.

48.     Defendant and its representatives conspired to intentionally delay and deny the Claim as exhibited by Defendant's method of investigation, which was conducted in such a way to intentionally delay, deny, minimalize and/or underpay the loss incurred by Plaintiffs. Specifically, Defendant and its representatives willfully ignored the objective evidence of damage to the Property, all of which constitute a covered loss under the Policy and for which Plaintiffs are entitled to Policy benefits.

49.     Defendant's failure and incomplete investigation lead to a continued delay of covered insurance benefits to the detriment of the Plaintiffs.

50.     Defendant has failed to reasonably investigate Plaintiffs' claim for direct physical loss of and/or damage to the Property resulting from the windstorm on or about May 12, 2022.

51.     Defendant refuses to consider evidence supporting Plaintiffs' position, including comprehensive reports submitted by Plaintiffs and their representatives.

52.     Defendant has ignored evidence of covered direct physical loss and damage to the Property resulting from the windstorm that occurred on or about May 12, 2022.

53.     Defendant's failure to pay the Claim in full has resulted in a breach of contract.

54.     Defendant's failure to pay the Claim has resulted and continues to result in additional damages to the Property.

55.     Defendant has refused to pay the full amount of covered benefits due and owing under Plaintiffs' first-party contract without reasonable cause.

56. Defendant's conduct illustrates a misrepresentation of insurance policy benefits in order to deny full payment of insurance benefits owed to Plaintiffs according to the Policy.

57. Given the investigation required to properly evaluate the necessary repairs to restore Plaintiffs to their pre-loss condition, including careful planning and consideration required to properly handle the repairs, Defendant's refusal to provide insurance benefits for the covered damages was vexatious and without reasonable cause.

58. Given the continued investigation required to properly evaluate the necessary repairs to restore Plaintiffs to their pre-loss condition, including the careful planning and consideration required to properly handle the Claim, Defendant's refusal to provide insurance benefits to Plaintiffs that were due and owing under the Policy was vexatious and without reasonable cause.

59. As a result of Defendant's acts and omissions as stated herein, Defendant's representatives failed to fully quantify Plaintiffs' losses, and Defendant's wrongful delay and denial of the Claim failed to place Plaintiffs in a pre-loss condition. Such bad faith misconduct is a violation of SDCL § 58-33-67.

60. Due to Defendant's bad faith adjustment of Plaintiffs' Claim, Plaintiffs were forced to quantify their own damages. Based on the investigation of Plaintiffs' contractors and representatives, significant repairs were recommended. Specifically, Plaintiffs' representatives/contractors recommended various necessary repairs to the Property as set forth in their Estimates and Reports.

61.    Defendant's adjusters acted as authorized agents of Defendant. Defendant's adjusters acted within the course and scope of their authority as authorized by Defendant. Plaintiffs relied on Defendant and its adjusters to properly investigate, evaluate and adjust the Claim regarding the Property and to issue payments to fix such damage. To date, proper payments have not been made regarding the Claim.

62.    Defendant's failure to properly adjust the Claim has resulted in a delay of covered benefits to Plaintiffs without reasonable cause.

63.    Defendant's conduct has resulted in an avoidable harm to Plaintiffs.

64.    Plaintiffs have fulfilled all duties required of them under the Policy after discovery of the loss.

65.    Plaintiffs have performed all conditions precedent and subsequent required under the Policy, or alternatively, have been excused from performance by acts, representations, and/or conduct of Defendant.

66.    All acts by Defendant were undertaken by and completed by its officers, agents, servants, employees, and/or representatives. Such actions were done with the full authorization or ratification of Defendant and/or were completed in the normal and routine course and scope of employment with Defendant.

67.    As a result of Defendant's wrongful acts and omission, Plaintiffs were forced to retain the professional services of the undersigned attorneys who are representing Plaintiffs with respect to the following causes of action.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### (Breach of Contract)

68.    Plaintiffs reallege and reaffirm all paragraphs of this Complaint as if fully set forth herein.

69.    Plaintiffs purchased an insurance policy requiring Defendant to pay for damages resulting from the loss.

70.    The Policy between Defendant and Plaintiffs is a binding contract of insurance.

71.    Plaintiffs paid premiums and otherwise performed all conditions precedent to recovery of benefits under the Policy with Defendant.

72.    Defendant has denied certain covered damages and continues to delay and deny certain claimed damages.

73.    Defendant's failure to honor its obligations under the Policy is a breach of contract.

74.    Defendant's breach of contract has damaged and continues to damage Plaintiffs.

75.    Plaintiffs are entitled to all benefits due and owing under the Policy.

76.    Defendant's refusal to pay the full amount of said loss was vexatious and without reasonable cause and Plaintiffs are entitled to attorney's fees pursuant to SDCL § 58-12-3.

### SECOND CLAIM FOR RELIEF
### (Bad Faith)

77.    Plaintiffs reallege and reaffirm all paragraphs of this Complaint as if fully set forth herein.

78.    Under the Policy and South Dakota law, Defendant had a duty to act reasonably and in good faith in handling Plaintiffs' Claim.

79.     Under the Policy and South Dakota law, Defendant had a duty to act with ordinary, reasonable diligence in investigating the claims submitted by Plaintiffs and in determining the amounts due and owing under the Policy in question, and to pay all amounts due and owing.

80.     Under the Policy and South Dakota law, Defendant owes Plaintiffs the duty of good faith and fair dealing.

81.     Defendant had an obligation to conduct a thorough, fair, unbiased and timely investigation of the Claim presented to it, and then properly evaluate and timely pay the Claims.

82.     Defendant sold Plaintiffs the Policy at issue, the intent of which was to provide benefits for covered losses that occurred during the Policy period.

83.     Defendant knew Plaintiffs purchased the Policy to protect the Property in the event of a loss.

84.     Plaintiffs have cooperated with Defendant in the processing of the Claim for covered benefits resulting from the weather event referenced herein.

85.     Plaintiffs have cooperated with Defendant in the investigation of their Claim for covered benefits resulting from the weather event referenced herein.

86.     Plaintiffs have not erected any obstacles to deter Defendant's ability to investigate Plaintiffs' Claim for covered benefits resulting from the weather event referenced herein.

87.     Plaintiffs have not erected any obstacles to Defendant's ability to evaluate Plaintiffs' Claim for covered benefits resulting from the weather event referenced herein.

88.     Defendant owes Plaintiffs the duty to comply with SDCL § 58-33-67, which prohibits unfair or deceptive practices in dealing with its insureds, including but not limited to the unfair or deceptive practices of:

a.  Failing to acknowledge and act within thirty days upon communications with respect to claims arising under insurance policies and to adopt and adhere to reasonable standards for prompt investigation of such claims;

b.  Making claims payments to any claimant, insured, or beneficiary not accompanied with a statement setting forth the coverage under which the payments are being made;

c.  Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of the claim;

d.  Failing to promptly settle claims, where liability has become reasonably clear under one portion of the insurance policy coverage to influence settlements under other portions of the insurance policy coverage.

89.     As demonstrated by the preceding paragraphs, Defendant breached the duty of good faith and fair dealing it owed to Plaintiffs.

90.     Defendant disregarded the validity of Plaintiffs' Claim for direct physical loss and damage resulting from the weather event referenced herein.

91.     Defendant disregarded information and documentation illustrating there is unpaid covered damages to the Property resulting from the weather event referenced herein.

92.     Defendant failed to indemnify Plaintiffs to their pre-loss condition.

93.     Defendant failed to treat Plaintiffs' interests with equal regard to its own.

94.     Defendant has misrepresented the terms of the Policy.

95.     Defendant has refused to pay Plaintiffs' Claim without conducting a reasonable investigation based upon all available information.

96.     Despite being provided with information substantiating covered damages overlooked by Defendant during its investigation, Defendant has not attempted in good faith to effectuate a prompt, fair and equitable settlement of Plaintiffs' Claim in which liability has become reasonably clear.

97.     Defendant has delayed and denied Plaintiffs' Claim and continues to delay and deny Plaintiffs' Claim for covered damages without conducting a thorough investigation in an attempt to effectuate a deceptively low settlement.

98.     Defendant has compelled Plaintiffs to institute litigation to recover amounts due under their insurance Policy by offering substantially less than Plaintiffs' amount of loss.

99.     Defendant used unfair and deceptive acts and practices in dealing with the Plaintiffs' Claim for coverage through, among other things, its failure to acknowledge and act on Plaintiffs' Claim, its failure to adhere to reasonable standards regarding the handling of Claims, its failure to reasonably investigate the Claim, its failure to promptly provide a reasonable explanation of the basis of the delay or denial, and its failure to promptly settle Plaintiffs' Claim when liability was clear.

100.    Defendant has mischaracterized the evidence to the benefit of itself by, among other reasons, ignoring evidence presented by its insured illustrating covered damages overlooked by Defendant during its investigation.

101.    Defendant has failed to be open and honest in its dealings with Plaintiffs.

102.    Defendant denied Plaintiffs' claim by failing to objectively evaluate Plaintiffs' Claim based on all available evidence and not just evidence Defendant believes supports its position.

103.    Defendant's position to underpay the benefits owed to Plaintiffs was intentional and not accidental.

104.    Defendant failed to assist Plaintiffs with the presentation of the Claim.

105.    Defendant breached its duty to act reasonably and in good faith by conducting an out-come oriented investigation of Plaintiffs' Claim for direct physical loss and/or damages resulting from the weather event referenced herein.

106.    Defendant denied Plaintiffs' Claim without having documented a reasonable investigation based on all information.

107.    Defendant has ignored objective evidence illustrating covered damages resulting from the weather event referenced herein.

108.    Defendant lacked a reasonable basis to deny or withhold payment of covered benefits for direct physical loss and damage resulting from the subject weather event.

109.    Defendant's conduct demonstrates that it repeatedly aimed at benefiting itself to the detriment of Plaintiffs.

110.    Defendant has committed unfair claim settlement practices as alleged in the preceding paragraphs of this Complaint.

111.    Defendant has acted in bad faith in its failure to consider all evidence and reports, including those provided by Plaintiffs and Plaintiffs' representatives.

112.    Defendant has acted in bad faith in its failure to conduct a thorough, fair, and complete investigation of the Claim.

113.    Defendant has acted in bad faith in forcing Plaintiffs to incur the expense of professionals as part of proving their Claim.

114.    Defendant's actions and omissions constitute a bad faith breach of the insurance contract.

115.    Defendant has committed such actions with such frequency as to indicate a general business practice.

116.    Defendant knew or through a reasonable investigation should have known that it lacked a reasonable basis to deny or withhold payment of benefits owed under the Policy.

117.    Defendant intentionally and recklessly employs a claims handling process that deliberately aims at maximizing its profits and producing an unjustified windfall, all at the expense of its insureds.

118.    Defendant intentionally and recklessly employs a claims handling process that is intended to delay the full payment benefits owed under the terms of its insurance policy.

119.    Defendant's conduct constitutes actionable bad faith and has caused Plaintiffs damage in an amount to be proven at trial.

120.    Defendant's conduct was done without a reasonable basis and with knowledge or reckless disregard for the lack of reasonable basis.

121.    Defendant's refusal to provide coverage and to honor the plain terms of its insurance contract was willful, wanton and with reckless disregard, entitling Plaintiffs to an award of punitive damages.

122.    Defendant's refusal to provide coverage and honor the plain terms of its insurance contract caused substantial damages to Plaintiffs, including, but not limited to, attorney's fees, and public adjuster fees.

**THIRD CLAIM FOR RELIEF**
**(Vexatious Refusal to Pay)**

123.    Plaintiffs reallege and reaffirm all paragraphs in this Complaint as if fully set forth herein.

124.    Defendant's failure and refusal to pay insurance benefits under the Policy was vexatious and without reasonable cause, such that Plaintiffs are entitled to recovery of their reasonable attorney's fees pursuant to SDCL § 58-12-3.

125.    Defendant misrepresented its insurance policy benefits by ignoring policy provisions and it violated applicable South Dakota law in order to deny full payment of insurance benefits owed to Plaintiffs according to the Policy.

126.    Defendant maintained its unreasonable and vexatious Claim denials even after it knew or reasonably should have known that such benefits were owed under the Policy it sold Plaintiffs making attorney's fees appropriate under SDCL § 58-33-5 and § 58-33-46.1.

**FOURTH CLAIM FOR RELIEF**
**(Punitive Damages)**

127.    Plaintiffs reallege and reaffirm all paragraphs of this Complaint as if fully set forth herein.

128.    In doing all things herein alleged, Defendant acted intentionally, recklessly, vexatious, oppressively and/or maliciously and was guilty of a wanton and reckless disregard of the contractual and statutory and/or common law rights of Plaintiffs.

129.    Plaintiffs are entitled to punitive damages as the only way of deterring Defendant from continuing to employ these wrongful, unreasonable and vexatious tactics against its own policyholders.

130.    Defendant's denial is intentional, malicious, oppressive, and done with reckless disregard for the rights of its own insured, and punitive damages are necessary to deter future conduct of this sort and shall be determined in an amount in according to Defendant's net worth.

<u>**REQUEST FOR JURY TRIAL**</u>

131.    Plaintiffs request trial by jury with respect to all claims and issues triable to a jury.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE Plaintiffs pray for judgment against Defendant as follows:

1.    For damages resulting from Defendant's breach of contract;

2.    For additional sums as and for punitive or exemplary damages in an amount to be set by a jury herein, based upon Defendant's net worth and earnings;

3.    For Plaintiffs' attorney's fees, costs and expenses because of Defendant's vexatious and unreasonable refusal to pay pursuant to SDCL § 58-12-3;

4.    For pre-judgment and post-judgment interest on any award to which Plaintiffs are held entitled by jury;

5.    For Plaintiffs' costs and disbursements herein; and

6.    For such other and further relief as the Court determines to be just and proper.


(THE REST OF THIS PAGE IS INTENTIONALLY LEFT BLANK DATE AND SIGNATURE TO FOLLOW)

**SAMP LAW OFFICES**

By: /s/ Rolly Samp
Rolly Samp, Esq. (SD #1511)
2101 W. 41st Street
Sioux Falls, SD 57105
Telephone: 605-339-1020
Facsimile: 605-334-6630
E-Mail: rsamp@samplaw.com

and

**VANDENBOUT LAW, PLLC**

By: /s/ Lawrence A. VandenBout
Lawrence A. VandenBout, Esq. (CO # 47449)
Pro Hac Vice Forthcoming
1550 Wewatta St., Floor 2
Denver, CO 80202
Telephone: 720-901-2984
Email: Lawrence@vandenboutlaw.com
Attorneys for Plaintiffs

JS 44   (Rev. 03/24)    **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) **PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| Shelby Hiller and Ty Hiller, as presonal representatives of the Estate of James D. Hiller | Nationwide Agribusiness Insurance - NAIC |

**(b)**   County of Residence of First Listed Plaintiff    Moody
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Des Monies County, IA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)**   Attorneys *(Firm Name, Address, and Telephone Number)*

Rolly H. Samp, Samp Law Office, 2101 W. 41st Street, Suite 2000, Sioux Falls, SD 57105, 605-339-1020

Attorneys *(If Known)*

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government
Plaintiff
- [ ] 2   U.S. Government
Defendant
- [ ] 3   Federal Question
*(U.S. Government Not a Party)*
- [x] 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                     *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [x] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury  - | [ ] 690 Other | [ ] 423 Withdrawal | [ ] 376 Qui Tam (31 USC |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| [ ] 140 Negotiable Instrument | Liability | [ ] 367 Health Care/ | | **INTELLECTUAL** | [ ] 400 State Reapportionment |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted | Liability | [ ] 368 Asbestos Personal | | [ ] 835 Patent - Abbreviated | [ ] 460 Deportation |
| Student Loans | [ ] 340 Marine | Injury Product | | New Drug Application | [ ] 470 Racketeer Influenced and |
| (Excludes Veterans) | [ ] 345 Marine Product | Liability | | [ ] 840 Trademark | Corrupt Organizations |
| [ ] 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets | [ ] 480 Consumer Credit |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | [ ] 371 Truth in Lending | Act | | [ ] 485 Telephone Consumer |
| [ ] 190 Other Contract | Product Liability | [ ] 380 Other Personal | [ ] 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal | Property Damage | Relations | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | Injury | [ ] 385 Property Damage | [ ] 740 Railway Labor Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ |
| | [ ] 362 Personal Injury - | Product Liability | [ ] 751 Family and Medical | [ ] 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement | | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate | | [ ] 870 Taxes (U.S. Plaintiff | Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ | Sentence | | or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party | [ ] 899 Administrative Procedure |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities - | [ ] 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | [ ] 462 Naturalization Application | | Agency Decision |
| | [ ] 446 Amer. w/Disabilities - | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration | | [ ] 950 Constitutionality of |
| | Other | [ ] 550 Civil Rights | Actions | | State Statutes |
| | [ ] 448 Education | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

- [x] 1   Original
Proceeding
- [ ] 2   Removed from
State Court
- [ ] 3   Remanded from
Appellate Court
- [ ] 4   Reinstated or
Reopened
- [ ] 5   Transferred from
Another District
*(specify)*
- [ ] 6   Multidistrict
Litigation -
Transfer
- [ ] 8   Multidistrict
Litigation -
Direct File

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332(a) and 28 U.S.C. 1441

Brief description of cause:
breach of contract, bad faith conduct, breach of fiduciary duty, and refusal to pay the full amount of covered insurance benefits

## VII.  REQUESTED IN
COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   [x] Yes   [ ] No

## VIII.  RELATED CASE(S)
IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
05/10/2024

SIGNATURE OF ATTORNEY OF RECORD
s/ Rolly Samp

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)**

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.